1
2
3
4                       UNITED STATES DISTRICT COURT

5                     NORTHERN DISTRICT OF CALIFORNIA

6

7    EDGAR PATINO,                          Case No.  19-cv-02151-EMC

8                 Petitioner,

9           v.                             **ORDER DENYING PETITION FOR**
                                           **WRIT OF HABEAS CORPUS**
10   PEOPLE OF THE STATE OF
     CALIFORNIA,
11
                 Respondent.
12

13

14                        **I.**        **INTRODUCTION**

15          Edgar Patino filed this action for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 to

16   challenge his conviction and sentence from Alameda County Superior Court.  Respondent has

17   filed an answer to the petition, and Mr. Patino has filed a traverse.  For the reasons discussed

18   below, the petition is denied.

19                        **II.**       **BACKGROUND**

20   A.     The Crime

21          The California Court of Appeal described the evidence presented at trial:

22              Around the summer of 2011, Y.B. and Patino started dating.  At that
                time, Y.B. had two daughters from a prior marriage, Doe, born in
23              2000, and a younger daughter, born in 2002; they lived together with
                Y.B.'s relatives in Milpitas.  Toward the end of 2011, Y.B. and her
24              daughters moved in with Patino in Hayward. . . .

25              Doe moved with her mother and her younger sister to Hayward to
                live with Patino when Doe was in sixth grade.  She lived with Patino
26              in Hayward for part of sixth and seventh grade, when she was 11
                and 12 years old.  Doe would get home from school around 2:00
27              p.m.  Patino would then generally get home around 3:00 p.m., and
                Y.B. would get home around 5:00 or 6:00 p.m.
28

United States District Court
Northern District of California

Doe testified that Patino touched her vagina more than 20 times while she lived with him at the Hillview residence. The conduct began one day after Patino, Y.B., Doe, and Doe's younger sister all went to a laundromat to do laundry. There was something white on Doe's underwear, and Patino commented that it probably meant Doe had an infection. Patino and Doe went home from the laundromat in one car, and Y.B. and Doe's younger sister were in another car. When Doe and Patino got home, Patino told Doe to go in her bedroom, and he was going to check if she had an infection. Doe sat on the bed with her pants and underwear off. Patino observed her pubic hair and told her it needed to be shaved. Then he got a battery-powered razor from his bedroom and shaved her. He told her to finish shaving herself, and she did.[3] Patino did not tell Doe at that time whether he thought she had an infection. Doe thought she was 11 years old when this occurred.

> [Footnote 3:] Doe testified that Patino shaved her again one time when she was taking a shower. This incident was corroborated by Y.B., who recalled on one occasion, she came home from work, and Doe's younger sister told her that Patino had gone into the bathroom while Doe was in the shower. Y.B. was going to ask Doe about it, but Patino came in the room and said they were all liars and he could end up in jail. Y.B. asked Doe what happened, and Doe seemed "really scared" and said that nothing happened, that Patino had come into the bathroom and showed her how to shave herself but he did not touch her in any inappropriate way.

Within a few weeks of this incident, Patino told Doe he needed to check her again to see if her infection was getting worse. Y.B. was at work when this happened. Patino did this many times. It would happen in Patino and Y.B.'s bedroom with the door closed. Doe testified Patino would "look around to see if he saw anything that wasn't right" and touch her vagina with his fingers. Patino would tell her he thought she had an infection because it did not smell right. He never took her to a doctor, however.

Patino also used his mouth and thumb on Doe's vagina. Doe testified Patino licked her vagina and told her "it would help the infection and it would help me get tighter." Patino told Doe her vagina was not tight enough, and if she had an orgasm, it would help her vagina get tighter. She testified Patino's tongue would go inside her vagina and "it was everywhere on my vagina." This happened many times, starting when Doe was still in sixth grade and continuing through the summer and into seventh grade. Patino would also press his thumb in her vagina, and he told Doe "pressing the loose skin inside would help" her vagina get tighter. Sometime it would hurt. This happened "[n]ot so often" but more than once.

Patino continued this conduct until Doe moved away to live with her grandmother. He touched her at least once a month for about a year. Patino would ask Doe when she was having her period, and he did not touch her during that time. What he did most frequently was "putting his mouth and tongue on [Doe's] vagina." Doe asked Patino why they did not tell Y.B. about what Patino was doing, and

he said Y.B. would not understand why he was doing it.  Doe testified that she did not tell her mother herself about what Patino was doing because her mother would not believe her.  Doe had told her mother about Patino telling her to get in the shower with him, and her mother had not believed her.[4]

> [Footnote 4:]  At trial, Doe testified that she showered with Patino on two occasions because he told her to get in the shower with him.  One time, she wore a bra and underwear, the other time she was naked.  Both times, Patino wore boxers.  On one of those occasions, Patino kissed Doe.

> **Defense**
> Patino called five character witnesses.  These witnesses testified generally that they had seen Patino around children or they had known him when they were children, and they did not see him behave inappropriately with children, and they did not believe he was a sexual deviant with children.

*People v. Patino,* No. A149686, 2018 WL 4113155, *1-3 (Cal. Ct. App. Aug. 29, 2018).

Evidence also was presented that Mr. Patino had threatened Doe's mother, Y.B., and put a plastic bag over Y.B.'s head to try to suffocate her when she was pregnant.  *Id.* at *2.  The crimes against Y.B. are not recounted in further detail here because none of the legal issues in the habeas petition pertain to those crimes.

B.   Procedural History

Following a jury trial in Alameda County Superior Court, Mr. Patino was convicted of assault upon his then-girlfriend Y.B. by means of force likely to cause great bodily injury (*see* Cal. Penal Code § 245(a)(4)), criminally threatening Y.B. (*see id.* at § 422), and continuous sexual abuse of Doe, a child under age 14, while he resided with and had recurring access to her (*see id.* at § 288.5(a)).  The jury found true the allegation that Mr. Patino had substantial sexual conduct with Doe (*see id.* at § 1203.066(a)(8)).  Mr. Patino was sentenced to a total of 17 years, eight months in prison.  Docket No. 12-2 at 33.

He appealed.  The California Court of Appeal affirmed his conviction.  Docket No. 12-16. The California Supreme Court denied Mr. Patino's petition for review without comment.  Docket No. 12-18.

Mr. Patino then filed this action seeking a federal writ of habeas corpus.  He alleges the following claims in his petition for writ of habeas corpus:  (1) the jury instruction regarding the crime of continuous sexual abuse omitted the mental state required and thereby deprived him of

United States District Court
Northern District of California

3

United States District Court
Northern District of California

his federal constitutional right to have a jury determine his guilt by proof beyond a reasonable doubt, *see* Docket No. 1 at 27; (2) the failure to instruct the jury on the lesser-included offense of committing a lewd act on a child deprived Mr. Patino of his federal constitutional rights to a fair trial and to have a jury determine his guilt by proof beyond a reasonable doubt, *see id.* at 31; (3) the admission of the "shower evidence regarding Doe's younger sister" deprived Mr. Patino of his federal constitutional right to due process, *id.* at 34; (4) the removal of Juror B2 violated Mr. Patino's federal constitutional right to trial by an impartial jury, *id.* at 37; and (5) prosecutorial misconduct during closing argument deprived Mr. Patino of his federal constitutional right to a fair trial, *id.* at 41.  Respondent has filed an answer and Mr. Patino has filed a one-page traverse. The matter is now ready for decision.

### III.    JURISDICTION AND VENUE

This Court has subject matter jurisdiction over this action for a writ of habeas corpus under 28 U.S.C. § 2254.  28 U.S.C. § 1331.  This action is in the proper venue because the petition concerns the conviction and sentence of a person convicted in Alameda County, California, which is within this judicial district.  28 U.S.C. §§ 84, 2241(d).

### IV.    STANDARD OF REVIEW

This Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

The Antiterrorism And Effective Death Penalty Act of 1996 ("AEDPA") amended § 2254 to impose new restrictions on federal habeas review.  A petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if

the state court decides a case differently than [the] Court has on a set of materially

indistinguishable facts." *Williams (Terry) v. Taylor*, 529 U.S. 362, 412-13 (2000).

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if

the state court identifies the correct governing legal principle from [the Supreme] Court's

decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.

"[A] federal habeas court may not issue the writ simply because that court concludes in its

independent judgment that the relevant state-court decision applied clearly established federal law

erroneously or incorrectly.  Rather, that application must also be unreasonable." *Id.* at 411.  "A

federal habeas court making the 'unreasonable application' inquiry should ask whether the state

court's application of clearly established federal law was 'objectively unreasonable.'" *Id.* at 409.

Section 2254(d) generally applies to unexplained as well as reasoned decisions.  "When a

federal claim has been presented to a state court and the state court has denied relief, it may be

presumed that the state court adjudicated the claim on the merits in the absence of any indication

or state-law procedural principles to the contrary." *Harrington v. Richter*, 562 U.S. 86, 99 (2011).

When the state court has denied a federal constitutional claim on the merits without explanation,

and there is no lower state court decision to "look through" to, the federal habeas court "must

determine what arguments or theories supported or . . . could have supported, the state court's

decision; and then it must ask whether it is possible fairminded jurists could disagree that those

arguments or theories are inconsistent with the holding in a prior decision of [the U.S. Supreme]

Court." *Id.* at 102.

## V.    <u>DISCUSSION</u>

A.    <u>Challenge To Jury Instruction On Continuous Sexual Abuse of a Child</u>

Mr. Patino contends that the jury instruction given on the crime of continuous sexual abuse

of a child violated his federal constitutional right "to determination of his guilt or innocence by

proof beyond reasonable doubt by jury" because it omitted the mental state required for the

offense.  Docket No. 1 at 27 (citing 5th, 6th and 14th Amendments to U.S. Constitution).

According to him, the offense must be committed "for the purpose of sexual arousal, gratification,

or abuse" but the jury instruction failed to include this requirement.  Docket No. 1 at 26.  He urges

5

that he "was conducting a parental inspection which was not accompanied by lewd intent." *Id.*

1. Background

Mr. Patino was charged with continuous sexual abuse of a minor under California Penal Code § 288.5(a). That statute provides, in relevant part:

> Any person who either resides in the same home with the minor child or has recurring access to the child, who over a period of time, not less than three months in duration, engages in three or more acts of substantial sexual conduct with a child under the age of 14 years at the time of the commission of the offense, as defined in subdivision (b) of Section 1203.066, or three or more acts of lewd or lascivious conduct, as defined in Section 288, with a child under the age of 14 years at the time of the commission of the offense is guilty of the offense of continuous sexual abuse of a child.

Cal. Penal Code § 288.5(a). "Substantial sexual conduct" in turn, is defined as "penetration of the vagina or rectum of either the victim or the offender by the penis of the other or by any foreign object, oral copulation, or masturbation of either the victim or the offender."[1] Cal. Penal Code § 1203.066(b).

At Mr. Patino's trial, the "prosecutor relied solely on the theory that Patino engaged in 'substantial sexual conduct,' and, therefore, requested a modified version of CALCRIM No. 1120" that deleted reference to lewd or lascivious conduct which was the other potential basis for liability under § 288.5. *Patino*, 2018 WL 4113155, at *3; *see* RT 1075. Defense counsel agreed to the modified version of CALCRIM No. 1120 and told the trial judge she was fine "with the way the court ha[d]" the instruction. *Patino*, 2018 WL 4113155, at *3 (brackets in source).

The jury thus was instructed with the following modified version of CALCRIM No. 1120:

> The defendant is charged in Count 1 with continuous sexual abuse of a child under the age of 14 years in violation of Penal Code section 288.5(a).
>
> To prove that the defendant is guilty of this crime, the People must prove that:

---

[1] As an alternative to three or more acts of "substantial sexual conduct," a violation of § 288.5(a) also may occur if a defendant commits three or more violations of § 288(a) within a time period of more than three months. Section 288(a) is violated by "[a]ny person who willfully and lewdly commits any lewd or lascivious act . . . upon or with the body, or any part or member thereof, of a child [under age 14] . . ., with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person or the child." Cal. Penal Code § 288(a) (eff. Sept. 9, 2010 to Dec. 31, 2018). As stated in the text, this was not the theory of the case against Mr. Patino.

United States District Court
Northern District of California

> 1. The defendant lived in the same home with or had recurring access to a minor child;
>
> 2. The defendant engaged in three or more acts of substantial sexual conduct with the child;
>
> 3. Three or more months passed between the first and last acts;
>
> AND
>
> 4. The child was under the age of 14 years at the time of the acts[.]
>
> *Substantial sexual conduct* means oral copulation or masturbation of either the child or the perpetrator, or penetration, however slight, of the child's or perpetrator's vagina or rectum by the other person's penis or any foreign object.
>
> *Oral copulation* is any contact, no matter how slight, between the mouth of one person and the sexual organ or anus of another person. Penetration is not required.
>
> *A Foreign Object* includes any part of the body except a penis.
>
> You cannot convict the defendant unless all of you agree that he committed three or more acts over a period of at least three months, but you do not all need to agree on which three acts were committed.
>
> It is not a defense that the child may have consented to the act.

Suppl. CT 427; RT 1220-21.

Mr. Patino argued on appeal (as he does in his federal habeas petition) that the instruction omitted the specific intent that is necessary for a § 288.5 conviction. The California Court of Appeal rejected Mr. Patino's arguments, concluding that the instruction was a correct statement of California law and that, even if there was error, it was harmless:

> There is no additional requirement under section 288.5(a) or section 1203.066 that the act constituting "substantial sexual conduct" must be accomplished with a specific purpose or intent. Thus, in *People v. Garcia* (2014) 229 Cal.App.4th 302, the Court of Appeal observed, "Substantial sexual conduct [for purposes of section 288.5] refers to certain acts (penetration, oral copulation or masturbation) but does not require any kind of specific intent." (*Id.* at p. 312, fn. 3, italics added.) In *[People v. Avina,* 14 Cal. App. 4th 1303 (Cal. Ct. App. 1993)], cited by *Garcia*, the court stated, "A conviction for section 288.5 . . . could be based upon a course of substantial sexual conduct within the meaning of section 1203.066, subdivision (b), which requires no specific intent." (*Avina, supra,* 14 Cal.App.4th at p. 1313, italics added; *see also People v. Whitham*

(1995) 38 Cal.App.4th 1282, 1293 (*Whitham*) [noting "the 'lewd or lascivious conduct' aspect of section 288.5 requires the specific intent of sexual gratification, but the 'substantial sexual conduct' aspect does not"].)

Given the statutory language of section 288.5(a) and the recognition in case law that "substantial sexual conduct" requires no specific intent, the trial court did not err in giving the modified version of CALCRIM No. 1120 that contained no reference to any specific intent.  (*Cf. Whitham, supra*, 38 Cal.App4th at pp. 1287–1294.)[7]

> [Footnote 7]:  In *Whitham*, the Court of Appeal . . . reasoned, "'[I]t is the nature of the act that renders the abuse "sexual" and not the motivations of the perpetrator.'  [Citation.]  This being so, it makes eminent sense to include in section 288.5 a method of violation based upon 'substantial sexual conduct' unaccompanied by the specific intent required to prove a violation of section 288."  (*Id* at p. 1292.)

Patino concedes that when "substantial sexual conduct" involves rape, sodomy, or oral copulation, no additional showing of a sexual intent is required.  (In such cases, he acknowledges, "The act speaks for itself.")  He argues, however, that there are certain cases of "non-forcible sexual penetration," such as medical examinations, that are not crimes but would fall within the description of "substantial sexual conduct" if an intent requirement were not judicially imposed.  From this argument, he claims that when "substantial sexual conduct" is based on penetration of the vagina or rectum of the victim by any foreign object, the conduct must be done "for the purpose of sexual arousal, gratification, or abuse," quoting language from section 289, subdivision (k)(1).  But section 289, criminalizes forcible sexual penetration regardless of the age of the victim, a sexual offense quite different from the offense charged in this case.  Section 288.5 (the charged offense) makes no reference to section 289 or the phrase "sexual penetration."  Instead, section 288.5 refers to "substantial sexual conduct," and section 1203.066 does not contain the phrase "sexual penetration" or refer to section 289 either.  Patino offers no authority or convincing explanation for his claim that the specific intent required for a violation of forcible sexual penetration under section 289 must be read into section 288.5.  Without such authority, we decline to read section 288.5 as requiring an intent element imported from a different criminal statute addressing a different offense.

In any event, we discern no prejudice under any standard of review in the circumstances of this case.  Doe testified that Patino touched her vagina more than 20 times and that he put his mouth and tongue on her vagina, telling her an orgasm "would help [her] vagina get tighter."  She testified that the oral copulation started when she was in the sixth grade and continued into the seventh grade.  Patino did not testify and thus never claimed he inspected Doe's vagina for infection or other medical purpose, and the defense theory was that Doe fabricated the allegations against Patino in an effort to break up the relationship between him and her mother.[8]  Patino's asserted concern with the jury instruction given is that without an intent element, a defendant could be found guilty of continuous sexual

abuse under section 288.5 based on "innocuous applications [of sexual penetration] (such as a genital exam by a health professional—or concerned parent or spouse)." But given the evidence and defense argument presented at trial, there is no possibility the jury could have found Patino engaged in digital penetration—but not oral copulation—and that his purpose and intent in doing so was only to inspect for infection. In other words, there is no possibility on the record before us that the jury convicted Patino of continuous sexual abuse based on a finding of purely innocuous conduct by Patino acting as a concerned caregiver.

> [Footnote 8:] On appeal, Patino claims his defense at trial "was that he was acting as a parent when he performed the penetrations complained of; in other words, the genital penetrations were accomplished for an innocent purpose." This is clearly incorrect. Defense counsel never suggested in her opening statement or closing argument that Patino touched Doe's vagina but only did so for some medical purpose. Nor would such a defense theory explain the oral copulation. Instead, the defense was that Doe made up her allegations, her testimony made no sense, and no such sexual conduct occurred.

*Patino*, 2018 WL 4113155, at *4-5.

The California Court of Appeal did not discuss the federal constitutional claim. Because there is no reasoned state court decision on the federal constitutional claim that had been presented to that court, this Court "must determine what arguments or theories supported or . . . could have supported the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the U.S. Supreme Court. *Harrington v. Richter*, 562 U.S. at 102.

       2.    <u>Analysis of Federal Constitutional Claim</u>

To obtain federal habeas relief for an error in the jury instructions, a petitioner must show that the error "so infected the entire trial that the resulting conviction violates due process." *Estelle v. McGuire*, 502 U.S. 62, 72 (1991). A jury instruction violates due process if it fails to give effect to the requirement that "the State must prove every element of the offense." *Middleton v. McNeil*, 541 U.S. 433, 437 (2004). "'A single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge.'" *Id.* (quoting *Boyde v. California*, 494 U.S. 370, 378 (1990)). "Even if there is some 'ambiguity, inconsistency, or deficiency' in the instruction, such an error does not necessarily constitute a due process violation." *Waddington v. Sarausad*, 555 U.S. 179, 190 (2009) (quoting *Middleton v. McNeil*, 541

United States District Court
Northern District of California

U.S. at 437).  Where an ambiguous or potentially defective instruction is at issue, the court must inquire whether there is a "reasonable likelihood" that the jury applied the challenged instruction in a way that violates the Constitution.  *Estelle*, 502 U.S at 72 & n.4; *Boyde*, 494 U.S. at 380.  If a constitutional error is found in the jury instructions, the federal habeas court also must determine whether that error was harmless by looking at the actual impact of the error.  *Calderon v. Coleman*, 525 U.S. 141, 146-47 (1998).

The California Court of Appeal's rejection of Mr. Patino's instructional error claim was not contrary to, or an unreasonable application of, clearly established law from the U.S. Supreme Court.  The appellate court determined that the instruction correctly stated California law because there was no requirement under state law that the substantial sexual conduct be done for the purpose of sexual arousal, gratification, or abuse.  The California Court of Appeal rejected Mr. Patino's interpretation of the statute as a matter of state law.  The California Court of Appeal's interpretation of California law is binding in this federal habeas action.  *See Hicks v. Feiock*, 485 U.S. 624, 629-30 (1988).  That is, this Court's analysis begins with an acceptance that the law of California is that a § 288.5 offense based on substantial sexual conduct does not include a requirement that the substantial sexual conduct be done for the purpose of sexual arousal, gratification, or abuse.  Here, that determination of state law means that the premise of Mr. Patino's challenge to the instruction is wrong.  In short, contrary to Mr. Patino's assertion, the jury did not have to find that the substantial sexual conduct was done for the purpose of sexual arousal, gratification, or abuse.

Mr. Patino's federal constitutional claim falls along with his erroneous premise.  He contends that the jury instruction impermissibly negated the need for the jury to find by proof beyond a reasonable doubt that the substantial sexual conduct be done for the purpose of sexual arousal, gratification, or abuse, but California law does not have such an element for this crime. For the jury to find the defendant guilty, the instruction required the jury to find that: (1) The defendant lived in the same home with or had recurring access to a minor child; (2) The defendant engaged in three or more acts of substantial sexual conduct with the child; (3) Three or more months passed between the first and last acts; and (4) The child was under the age of 14 years at

the time of the acts.  *See* CALCRIM 1120.  That was enough under state law.  It would not have been an unreasonable application of, or contrary to, any Supreme Court holding for the California Court of Appeal to determine that Mr. Patino's federal constitutional rights were not violated by the instruction that omitted an intent requirement that did not exist under state law.

The California Court of Appeal also reasonably could have determined that, even if there was an error in not specifying that the substantial sexual conduct had to be done with the intent to sexually arouse, gratify, or abuse, any such error would have been harmless.  To obtain federal habeas relief, an error must have had a "'substantial and injurious effect or influence in determining the jury's verdict.'"  *Hedgpeth v. Pulido*, 555 U.S. 57, 58 (2008) (per curiam) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993)).  The state appellate court reasonably rejected Mr. Patino's argument that a specific intent should be read into the statute to avoid criminalizing innocent conduct, such as a medical exam by a parent or doctor.  As the state appellate court explained, there was no possibility that such a scenario existed in this case given the evidence and arguments.  Mr. Patino did not testify and did not claim that he had inspected Doe's vagina for infection or other medical purpose; rather, the defense theory was that Doe had fabricated all the allegations against Mr. Patino to try to break up the relationship between him and Doe's mother.  Moreover, given Doe's testimony that Mr. Patino had touched her vagina with his mouth as well as his fingers many times, including putting his tongue inside her vagina, the California Court of Appeal reasonably concluded that "there is no possibility . . . that the jury convicted Patino of continuous sexual abuse based on a finding of purely innocuous conduct by Patino acting as a concerned caregiver."  *Patino*, 2018 WL 4113155, at *5.

There is no reasonable likelihood that the use of the modified version of CALCRIM No. 1120 eliminated the need for the prosecutor to find all elements of the § 288.5 offense proven beyond a reasonable doubt.  *Accord Provencio v. Hatton*, 2017 WL 4922894, at *12-13 (E.D. Cal. 2017) (jury instruction on § 288.5 offense that did not require specific intent did not violate due process because state court had determined that "there was no requirement that the conduct be committed with the specific intent to arouse" sexually either the defendant or the victim).  Mr. Patino has not shown that there was an instructional error, let alone one that "so infected the entire

trial that the resulting conviction violates due process," *Estelle v. McGuire*, 502 U.S. at 72, or one

that had a "substantial and injurious effect or influence in determining the jury's verdict," *Brecht*,

507 U.S. at 623.  He is not entitled to the writ on this claim.

B.    The Failure To Instruct on a Lesser-Included Offense

Mr. Patino contends that the trial court's failure to instruct on the lesser-included offense

of committing a lewd act on a child under age 14 deprived him of his due process right to a fair

trial and to have a jury determine his guilt by proof beyond a reasonable doubt.  Docket No. 1 at

31.

1.    Background

In his direct appeal, as here, Mr. Patino focused largely on his asserted state-law right to a

jury instruction on a lesser-included offense – mentioning the federal constitutional right only in

passing.  The California Court of Appeal rejected his claim and discussed only the state law

issues.  The California Court of Appeal explained that Mr. Patino was not entitled to an instruction

on committing a lewd and lascivious act on a child under the state-law tests for lesser-included

offense instructions.  *Patino*, 2018 WL 4113155, at *5-6.  The state appellate court also explained

that, even if committing a lewd act on a child under age 14 (see Cal. Penal Code § 288) was

considered a lesser offense of the continuous sexual abuse crime (*see* Cal. Penal Code § 288.5),

such an instruction "is only required when a jury could reasonably conclude the defendant

committed the lesser but not the greater offense." *Patino*, 2018 WL 4113155, at *6.

> [T]he record here does not support a conclusion that Patino violated
> section 288 but did not violate section 288.5.  Doe testified that
> Patino touched her vagina with his thumb, fingers, and tongue, and
> this happened more than 20 times during the time she was in sixth
> and seventh grade.  Based on her testimony, the jury could find
> Patino engaged in acts of substantial sexual abuse more than three
> times over the course of more than three months, or it could
> determine Doe was not telling the truth and conclude Patino was not
> guilty of any offense related to her.  But there was no substantial
> evidence from which the jury reasonably could have found Patino
> committed an act or acts that amounted to lewd or lascivious
> conduct but he did not engage in continuous sexual abuse.
> Accordingly, we find no error in the trial court not instructing the
> jury, sua sponte, on lewd and lascivious conduct.  (*See People v.
> Huggins* (2006) 38 Cal.4th 175, 217 [finding "no error under state
> law or violation of any constitutional guaranty" in failing to instruct
> on lesser uncharged offense where there was no substantial evidence

United States District Court
Northern District of California

> from which a reasonable jury could conclude that the lesser offense,
> but not the greater, was committed].)

*Patino*, 2018 WL 4113155, at *6.

The California Court of Appeal did not discuss the federal constitutional claim. Because there is no reasoned state court decision on the federal constitutional claim that had been presented to that court, this Court "must determine what arguments or theories supported or . . . could have supported the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the U.S. Supreme Court. *Harrington v. Richter*, 562 U.S. at 102.

2.      Analysis of Federal Constitutional Claim

Mr. Patino's claim fails because the Supreme Court has never recognized the right he asserts. Although instructions on lesser-included offenses must be given in capital cases, *Beck v. Alabama*, 447 U.S. 625 (1980), "[t]here is no settled rule of law on whether *Beck* applies to noncapital cases such as the present one. In fact, this circuit, without specifically addressing the issue of extending *Beck*, has declined to find constitutional error arising from the failure to instruct on a lesser included offense in a noncapital case." *Turner v. Marshall*, 63 F.3d 807, 819 (9th Cir. 1995), *overruled on other grounds by Tolbert v. Page*, 182 F.3d 677, 685 (9th Cir. 1999) (en banc). The failure of a state trial court to instruct on lesser-included offenses in a noncapital case does not present a federal constitutional claim, particularly when no such instruction was requested. *Solis v. Garcia*, 219 F.3d 922, 929 (9th Cir. 2000); *see also Windham v. Merkle*, 163 F.3d 1092, 1105-06 (9th Cir. 1998).

It is true that under Ninth Circuit precedent, "the defendant's right to adequate jury instructions on his or her theory of the case might, in some cases, constitute an exception to the general rule." *Solis*, 219 F.3d at 929 (citing *Bashor v. Risley*, 730 F.2d 1228, 1240 (9th Cir. 1984). *Solis* suggests, however, that there must be substantial evidence to warrant the instruction on the lesser-included offense. *Solis*, 219 F.3d at 929-30 (no duty to instruct on voluntary manslaughter as lesser included offense to murder because evidence presented at trial precluded a heat of passion or imperfect self-defense instruction; no duty to instruct on involuntary manslaughter because evidence presented at trial implied malice).

13

United States District Court
Northern District of California

Notwithstanding the Ninth Circuit's holding that a defendant's right to present a defense might in some circumstances require an instruction on a lesser-included offense, the Supreme Court has never so squarely held.  "[C]ircuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court.' § 2254(d)(1)."  *Glebe v. Frost*, 574 U.S. 21, 24 (2014).  Without such a Supreme Court holding, the California Court of Appeal's rejection of the claim that the failure to instruct on the lesser offense violated Mr. Patino's federal constitutional rights cannot be said to be "contrary to" or involve "an unreasonable application of clearly established Federal law, as determined by the Supreme Court."  28 U.S.C. § 2254(d)(1); *see, e.g., Bortis v. Swarthout*, 672 F. App'x 754 (9th Cir. 2017) (denying habeas relief; state court properly considered failure to give lesser-included offense instruction as only a state law error because "[t]here is no Supreme Court precedent establishing that a state trial court is required to instruct on lesser included offenses in noncapital cases.").

Even if there were such clearly established federal law from the Supreme Court that a lesser-included offense instruction must be given when that is the defendant's theory of defense, Mr. Patino would not be entitled to relief.  His theory of defense was that the touchings never occurred, not that they amounted only to lewd and lascivious acts upon a child.[2]

   The defense attacked Doe's credibility and argued that she had fabricated the accusations against Mr. Patino in an effort to break up the relationship between him and Doe's mother.  He identifies no testimony or argument in support of a supposed theory that he was only guilty of lewd and lascivious acts upon a child.  In fact, the California Court of Appeal implicitly found that Mr. Patino presented no such defense when it rejected his appellate argument that he was acting as a concerned parent when he touched Doe, as it identified the defense argument as being "that Doe made up her allegations, her testimony made no sense, and no such sexual conduct occurred."  *See Patino,* 2018 WL 4113155, at *5 n.8.

---

[2] California's lewd-and-lascivious-conduct-with-a-child statute, California Penal Code section 288(a), is violated by "[a]ny person who willfully and lewdly commits any lewd or lascivious act . . . upon or with the body, or any part or member thereof, of a child [under age 14] . . ., with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person or the child."  Cal. Penal Code § 288(a) (eff. Sept. 9, 2010 to Dec. 31, 2018).

1    The California Court of Appeal's rejection of the federal constitutional claim was not

2 "contrary to," or "an unreasonable application of, clearly established Federal law, as determined

3 by the Supreme Court of the United States" because there is no such law.  28 U.S.C. § 2254(d).

4 Mr. Patino is not entitled to the writ on this claim.

5    C.    <u>Admission of Evidence That Mr. Patino Showered With Doe's Little Sister</u>

6    Mr. Patino contends that the admission of evidence that he took a shower with Doe's little

7 sister, Jacqueline Doe, violated his Fourteenth Amendment due process right to a fair trial because

8 it "rais[ed] the specter of a second molestation victim."  Docket No. 1 at 34.

9    1.    <u>Background</u>

10    At an in limine hearing, the trial court decided that evidence about Mr. Patino showering

11 with Jacqueline Doe was admissible under California Evidence Code § 1108.[3]  At trial, Jacqueline

12 Doe (who was age 13 at the time of trial, RT 579) provided the following testimony:  She once

13 took a shower with Mr. Patino; she did not want to shower with him, but he made her do so.  RT

14 588, 589.[4]  They were not naked: she was wearing underwear and a bra and he was wearing

15 boxers.  RT 590-91.  The shower seemed to last a long time and she did not like it; it made her feel

16 "weird."  RT 590-91.  She admitted on cross-examination that she had told an interviewer at

17 Calico, a center to report and be interviewed about child abuse, about two years earlier that Mr.

18 Patino did not do anything that made her feel uncomfortable with her body.  RT 599, 600.  Later

19 in the trial, Doe testified that she saw Mr. Patino shower with Jacqueline "more than one time,"

20 RT 425, and Jaqueline's aunt and cousin testified that Jacqueline had told them that Mr. Patino

21 had taken a shower with her.  RT 612, 622.

22

23    [3] California Evidence Code § 1108(a) provides:  "In a criminal action in which the defendant is

24 accused of a sexual offense, evidence of the defendant's commission of another sexual offense or
offenses is not made inadmissible by Section 1101, if the evidence is not inadmissible pursuant to

25 Section 352."  California Evidence Code § 1101(a) generally prohibits "evidence of a person's
character or a trait of his or her character (whether in the form of an opinion, evidence of

26 reputation, or evidence of specific instances of his or her conduct) . . . when offered to prove his or
her conduct on a specified occasion."  Section 1108(a) thus provides an exception to Section

27 1101(a).

28    [4] Evidence and argument was presented, without objection from the defense, that the shower stall
was cramped, with a floor measuring 28 by 33 inches.  RT 930, 1124.

United States District Court
Northern District of California

1     The jury was instructed with CALCRIM No. 1191 regarding the use of the evidence.  CT

2  429-30.[5]  The jurors thus heard that, if they believed by a preponderance of the evidence that Mr.

3  Patino had annoyed or molested Jacqueline, they could conclude from that evidence that the

4  defendant was disposed or inclined to commit sexual offenses, and based on that decision, also

5  conclude that the defendant was likely to commit the charged offense of continuous sexual abuse

6  against Doe.  CT 429.

7     Mr. Patino argued on appeal, as he does here, that the evidence was inadmissible under

8  state evidence rules and violated his right to due process.  The California Court of Appeal rejected

9  his claim regarding the shower evidence.  The state appellate court determined that the evidence

10 was properly admitted under California Evidence Code § 1108 because it was sufficient for the

11 jury to find that Mr. Patino violated California Penal Code § 647.6 (i.e., annoying or molesting a

12 child) and therefore was a "sexual offense" that was admissible under California Evidence Code §

---

[5] The jury was instructed:

> The People presented evidence that the defendant committed the crime of annoying or molesting a child in violation of Penal Code Section 647.6(a) against Jacqueline Doe that was not charged in this case.  This crime is defined for you in Instruction # 1122.
>
> You may consider this evidence only if the People have proved by a preponderance of the evidence that the defendant in fact committed the uncharged offense.  Proof by a preponderance of the evidence is a different burden of proof from proof beyond a reasonable doubt.  A fact is proved by a preponderance of the evidence if you conclude that it is more likely than not that the fact is true.  [¶]  If the People have not met this burden of proof, you must disregard this evidence entirely.
>
> If you decide that the defendant committed the uncharged offense, you may, but are not required to, conclude from that evidence that the defendant was disposed or inclined to commit sexual offenses, and based on that decision, also conclude that the defendant was likely to commit and did commit Continual Sexual Abuse, as charged in Count 1.  If you conclude that the defendant committed the uncharged offense, that conclusion is only one factor to consider along with all the other evidence.  It is not sufficient by itself to prove that the defendant is guilty of Count 1, Continuous Sexual Abuse.  The People must still prove the charge beyond a reasonable doubt.  [¶]  Do not consider this evidence for any other purpose.

CT 429 (CALCRIM No. 1191).

1108:

> A reasonable jury could conclude that a young girl being made to
> shower alone with her mother's boyfriend is conduct a normal
> person would be unhesitatingly irritated by, and could further infer
> that the adult man who made his girlfriend's young daughter shower
> with him was motivated by an unnatural or abnormal sexual interest
> in children. (*Cf. Jandres, supra*, 226 Cal.App.4th at pp. 345, 354–
> 355 [where evidence showed the defendant put his finger in an 11-
> year-old girl's mouth, "a jury reasonably could posit that
> defendant's conduct carried a sexual connotation, such that it would
> not have been an abuse of discretion for the trial court to permit the
> jury to determine whether defendant's conduct violated . . . section
> 647.6"].) The trial court did not err in determining the proffered
> evidence was sufficient for a jury to find, by a preponderance of the
> evidence, that Patino committed a "sexual offense" under Evidence
> Code section 1108 against Doe's younger sister.

*Patino*, 2018 WL 4113155, at *8.

The California Court of Appeal also determined that California Evidence Code § 352 – a provision comparable to Federal Rule of Evidence 403 for balancing the probative value against the prejudicial effect of evidence – did not require the exclusion of the evidence. "Patino's offense against Doe's younger sister was relevant in that it showed his unnatural sexual interest in young girls. It was not remote in time as it happened during the same period as the charged offense. We agree with the trial court that the evidence was not more egregious or inflammatory than the charged offense, and there was little risk of confusing the jury." *Patino*, 2018 WL 4113155, at *8.

The California Court of Appeal did not discuss the federal constitutional claim. Because there is no reasoned state court decision on the federal constitutional claim that had been presented to that court, this Court "must determine what arguments or theories supported or . . . could have supported the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the U.S. Supreme Court. *Harrington v. Richter*, 562 U.S. at 102.

> 2.   Analysis Of Due Process Claim

To violate due process, the allegedly wrongful admission of evidence must be "so extremely unfair that its admission violates 'fundamental conceptions of justice.'" *Dowling v. United States*, 493 U.S. 342, 352 (1990) (quoting *United States v. Lovasco*, 431 U.S. 783, 790

United States District Court
Northern District of California

1   (1977)); *see, e.g., id.* (due process was not violated by admission of evidence to identify

2   perpetrator and link him to another perpetrator even though the evidence also was related to crime

3   of which defendant had been acquitted); *Gimenez v. Ochoa*, 821 F.3d 1136, 1145 (9th Cir. 2016)

4   (petitioner who showed that a vigorous debate had sprung up as to the validity of the "triad-only"

5   theory of shaken baby syndrome in the years since his murder conviction "failed to show that

6   permitting the prosecution's experts to testify based on a triad-only theory of [shaken baby

7   syndrome] was 'so extremely unfair that it[] . . . violate[d] fundamental conceptions of justice.'")

8   (alterations and omission in original).

9   The United States Supreme Court has never held that the introduction of propensity or

10  other allegedly prejudicial evidence violates due process. *See Estelle v. McGuire*, 502 U.S. 62,

11  68-70 (1991). *Estelle v. McGuire* specifically left open the question regarding propensity

12  evidence. *See id.* at 75 n.5 ("we express no opinion on whether a state law would violate the Due

13  Process Clause if it permitted the use of 'prior crimes' evidence to show propensity to commit a

14  charged crime").

15  In *Estelle v. McGuire*, the defendant was on trial for murder of his infant daughter after she

16  was brought to a hospital and died from numerous injuries suggestive of recent child abuse.  The

17  defendant told police the injuries were accidental.  Evidence was admitted at trial that the coroner

18  discovered during the autopsy older, partially healed, injuries that had occurred six or seven weeks

19  before the child's death.  *Id.* at 65.  Evidence of the older injuries was introduced to prove

20  "battered child syndrome," which "exists when a child has sustained repeated and/or serious

21  injuries by nonaccidental means."  *Id.* at 66.  The state appellate court had held that the proof of

22  prior injuries tending to establish battered child syndrome was proper under California law.  *Id.*  In

23  federal habeas proceedings, the Ninth Circuit found a due process violation based in part on its

24  determination that the evidence was improperly admitted under state law.  *Id.* at 66-67.  The U.S.

25  Supreme Court first held that the Ninth Circuit had erred in inquiring whether the evidence was

26  properly admitted under state law because "'federal habeas corpus relief does not lie for errors of

27  state law.'"  *Id.* at 67.  The Supreme Court then explained:

28  The evidence of battered child syndrome was relevant to show

18

1   intent, and nothing in the Due Process Clause of the Fourteenth
2   Amendment requires the State to refrain from introducing relevant
    evidence simply because the defense chooses not to contest the
3   point.  [¶]  Concluding, as we do, that the prior injury evidence was
    relevant to an issue in the case, we need not explore further the
4   apparent assumption of the Court of Appeals that it is a violation of
    the due process guaranteed by the Fourteenth Amendment for
5   evidence that is not relevant to be received in a criminal trial.  We
    hold that McGuire's due process rights were not violated by the
6   admission of the evidence.  *See Spencer v. Texas*, 385 U.S. 554,
    563–564, 87 S. Ct. 648, 653–654, 17 L.Ed.2d 606 (1967) ("Cases in
7   this Court have long proceeded on the premise that the Due Process
    Clause guarantees the fundamental elements of fairness in a criminal
8   trial. . . .  But it has never been thought that such cases establish this
    Court as a rulemaking organ for the promulgation of state rules of
    criminal procedure").

9   *Estelle v. McGuire*, 502 U.S. at 70 (omission in original).

10      The cited case, *Spencer v. Texas*, 385 U.S. at 563, held that the admission of evidence of

11  prior convictions did not violate due process.  The Supreme Court explained in *Spencer* that,

12  although there may have been other, perhaps better, ways to adjudicate the existence of prior

13  convictions (e.g., a separate trial on the priors after the trial on the current substantive offense

14  resulted in a guilty verdict), Texas' use of prior crimes evidence in a "one-stage recidivist trial"

15  did not violate due process.  *Id.* at 563-64.  "In the face of the legitimate state purpose and the

16  long-standing and widespread use that attend the procedure under attack here, we find it

17  impossible to say that because of the possibility of some collateral prejudice the Texas procedure

18  is rendered unconstitutional under the Due Process Clause as it has been interpreted and applied in

19  our past cases."  *Id.* at 564.

20      *Estelle v. McGuire* also cited to *Lisenba v. California*, 314 U.S. 219, 228 (1941), in

21  support of the conclusion that the introduction of the battered child syndrome evidence did not so

22  infuse the trial with unfairness as to deny due process of law.  *See Estelle v. McGuire*, 502 U.S. at

23  75.  In *Lisenba*, the Supreme Court rejected a claim that the admission of inflammatory evidence

24  violated the defendant's due process rights.  The evidence at issue in *Lisenba* was live rattlesnakes

25  and testimony about them to show they had been used by the defendant to murder his wife.  "We

26  do not sit to review state court action on questions of the propriety of the trial judge's action in the

27  admission of evidence.  We cannot hold, as petitioner urges, that the introduction and

28  identification of the snakes so infused the trial with unfairness as to deny due process of law.  The

United States District Court
Northern District of California

19

1   fact that evidence admitted as relevant by a court is shocking to the sensibilities of those in the

2   courtroom cannot, for that reason alone, render its reception a violation of due process." *Lisenba*,

3   314 U.S. at 228-29.

4       These three Supreme Court cases declined to hold that the admission of prejudicial or

5   propensity evidence violates the defendant's due process rights.  No Supreme Court cases since

6   *Estelle v. McGuire* have undermined the holdings in these three cases.  In other words, there is no

7   Supreme Court holding that the admission of prejudicial or propensity evidence violates due

8   process.

9       When the U.S. Supreme Court "cases give no clear answer to the question presented, let

10  alone one in [the petitioner's] favor, 'it cannot be said that the state court unreasonabl[y] appli[ed]

11  clearly established Federal law.'  Under the explicit terms of § 2254(d)(1), therefore, relief is

12  unauthorized." *Wright v. Van Patten*, 552 U.S. 120, 126 (2008) (alterations in original) (citation

13  omitted) (quoting *Carey v. Musladin*, 549 U.S. 70, 77 (2006), and 28 U.S.C. § 2254(d)(1)).

14      Indeed, the Ninth Circuit has recognized that the United States Supreme Court has never

15  held that the introduction of propensity or other allegedly prejudicial evidence violates due

16  process.  *See Foy v. Gipson*, 609 F. App'x 903 (9th Cir. 2015) (no habeas relief on claim that

17  admission of propensity evidence (i.e., that defendant assaulted another woman after he assaulted

18  victim in this case) violated defendant's right to due process because *Estelle v. McGuire's*

19  reservation of the question as to whether propensity evidence violates due process "forecloses the

20  conclusion that the state court's decision was contrary to, or an unreasonable application of,

21  clearly established federal law); *Munoz v. Gonzales*, 596 F. App'x 588 (9th Cir. 2015) (even if

22  admission of evidence of prior auto theft was improperly admitted to show propensity, habeas

23  relief foreclosed because *Estelle v. McGuire* reserved the question whether propensity evidence

24  violated due process); *Holley v. Yarborough*, 568 F.3d 1091, 1101 (9th Cir. 2009) (denying habeas

25  relief upon finding that trial court's admission of irrelevant pornographic materials was

26  "fundamentally unfair" under Ninth Circuit precedent but not contrary to, or an unreasonable

27  application of, clearly established Federal law under § 2254(d)); *Alberni v. McDaniel*, 458 F.3d

28  860, 865 (9th Cir. 2006) (denying habeas relief on claim that due process was violated by

United States District Court
Northern District of California

1   admission of evidence of defendant's past violent actions and explosive temper to show propensity

2   due to *Estelle v. McGuire's* reservation of the question whether propensity evidence violates due

3   process); *Moses v. Payne*, 555 F.3d 742, 760 (9th Cir. 2009) (because balancing test for excluding

4   evidence was creation of Ninth Circuit law and Supreme Court had not directly considered

5   whether trial court's exercise of discretion to exclude evidence violated defendants' constitutional

6   right to present evidence, state court's failure to use Ninth Circuit's balancing test is not contrary

7   to, or an unreasonable application of, clearly established Supreme Court precedent).

8       "[E]valuating whether a rule application was unreasonable requires considering the rule's

9   specificity.  The more general the rule, the more leeway courts have in reaching outcomes in case-

10  by-case determinations."  *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004).  Bearing in mind

11  the extremely general nature of the Supreme Court's articulation of a principle of "fundamental

12  fairness" – i.e., evidence that "is so extremely unfair that its admission violates 'fundamental

13  conceptions of justice'" may violate due process, *Dowling*, 493 U.S. at 352 – the California Court

14  of Appeal's rejection of Mr. Patino's due process claim was not contrary to, or an unreasonable

15  application of, clearly established federal law as set forth by the Supreme Court.  *See generally*

16  *Holley*, 568 F.3d at 1101 (denying writ because, although Supreme Court "has been clear that a

17  writ should be issued when constitutional errors have rendered the trial fundamentally unfair, it

18  has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence

19  constitutes a due process violation sufficient to warrant issuance of the writ") (citation omitted)).

20      In this circuit, the admission of prejudicial evidence may make a trial fundamentally unfair

21  and violate due process "[o]nly if there are *no* permissible inferences the jury may draw from the

22  evidence."  *Jammal v. Van de Kamp*, 926 F.2d 918, 920 (9th Cir. 1991).  "Evidence introduced by

23  the prosecution will often raise more than one inference, some permissible, some not; we must

24  rely on the jury to sort them out in light of the court's instructions.  Only if there are *no*

25  permissible inferences the jury may draw from the evidence can its admission violate due process.

26  Even then, the evidence must 'be of such quality as necessarily prevents a fair trial.'  Only under

27  such circumstances can it be inferred that the jury must have used the evidence for an improper

28

purpose." *Jammal*, 926 F.2d at 920 (citation and footnote omitted).[6]

Here, the evidence that Mr. Patino required Jacqueline (a child less than 13 years old at the relevant time) to take a shower with him in a cramped shower stall – an event that she did not want to take part in and that she said made her feel "weird" -- was relevant to whether Mr. Patino had an unnatural sexual interest in young girls. From this evidence that supported a view that he had an unnatural sexual interest in young girls, the jury could draw the inference that Mr. Patino had in fact engaged in substantial sexual conduct with Doe. Because the inference was permissible, the state appellate court did not unreasonably apply Supreme Court precedent in holding that the admission of the shower evidence did not violate due process. *See Jammal*, 926 F.2d at 920.

D.   Dismissal of Juror Whose Young Son Had Become Ill

During the presentation of evidence, the trial court dismissed a juror who reported that she needed to stay home to care for her young son who had become ill. Mr. Patino argues that this violated his Sixth Amendment right to trial by an impartial jury.

1.   Background

The issue arose after the prosecution had rested its case and the defense attorney presented

---

[6] In *Jammal*, the police found a gun, $47,000 and drugs in the trunk of Jammal's stolen car when they arrested Willis, who had stolen Jammal's car; 18 months later, the police found $135,000 (but no drugs) in the trunk of Jammal's car when they arrested Jammal. At trial, Willis said he had no idea the drugs and money were in the trunk of Jammal's stolen car until police opened it. The prosecution urged the jury to infer that both the drugs and the $47,000 found in the trunk of Jammal's car when Willis was arrested belonged to Jammal since Jammal later was arrested also with a large stash of cash in his trunk. Jammal unsuccessfully objected that this evidence effectively branded him a drug dealer and was therefore inadmissible character evidence. The Ninth Circuit explained that state law evidence rules were beside the point in a federal habeas proceeding and any problem in the jury inferring that Jammal had put the $47,000 and drugs in the car earlier (even if impermissible under state law) was not a constitutional problem because the inference that Jammal had put both the $47,000 and drugs in the trunk on an earlier occasion was a "rational inference" the jury could draw from the evidence that he was caught with $135,000 in his trunk. *Jammal*, 926 F.2d at 920.

*Jammal* is one of the few cases that provides any guidance as to what might amount to the introduction of evidence that might amount to fundamental unfairness. The Ninth Circuit continues to use the *Jammal* "permissible inference" test in habeas cases governed by AEDPA. *See, e.g., Noel v. Lewis*, 605 F. App'x 606, 608 (9th Cir. 2015) (admission of gang evidence did not violate due process); *Lundin v. Kernan*, 583 F. App'x 686, 687 (9th Cir. 2014) (citing *Jammal* and concluding that admission of graffiti evidence did not violate due process because there were permissible inferences to be drawn); *Gonzalez v. Knowles*, 515 F.3d 1006, 1011 (9th Cir. 2008) (citing *Jammal* and concluding that evidence of prior bad acts did not violate due process).

the testimony of her first two witnesses.  After all the jurors other than Juror No. B2 were excused for the day on Monday, August 1, 2016, the trial court (in the presence of the attorneys and defendant) spoke to Juror B2, who had submitted a note stating that her child had become ill.  RT 999-1000.  Juror B2 said that she would be unable to appear in court the next day (August 2) because her son had fallen ill; school authorities had informed her that her son "had a cold, something like a mild flu, and then they said his stomach—diarrhea.  I can't – I can't send him to school."  RT 1000-1001.  Juror B2 explained that she had recently moved to the area and did not know anyone who could care for her son the next day: the woman she lived with had a job and was unavailable to care for Juror B2's child, and Juror B2's relatives who had been available until that day were leaving town early the next morning.  RT 1000-1001.  Juror B2 was unwilling to leave her sick seven-year-old son home alone and did not think she could find someone who could care for him by the next day.  RT 1000-1001.

The prosecutor suggested that Juror No. B2 be dismissed for cause; the trial court agreed.  RT 1001-1002.  The court stated:  "[A]t this time the court is going to find good cause to relieve the juror and we'll put one of the alternates in place."  RT 1002.  Defense counsel objected, stating that she would be "perfectly happy to pause the defense case for a day" and bring her remaining witnesses back on the following day (Wednesday); if the juror was still unable to return at that point, the court could revisit the question of whether Juror B2 should be dismissed.  RT 1003.  The trial court rejected the defense proposal because Juror No. B2 "indicated that she could not say whether [her son] was going to be better in a day," Juror B2 had no one available to take care of her son, and "apparently the illness got worse today than it had been earlier this morning."  RT 1003-1004.

The dismissal of Juror B2 was done pursuant to California Penal Code § 1089, which provides, in relevant part:

> If at any time, whether before or after the final submission of the case to the jury, a juror dies or becomes ill, or upon other good cause shown to the court is found to be unable to perform his or her duty, or if a juror requests a discharge and good cause appears therefor, the court may order the juror to be discharged and draw the name of an alternate, who shall then take a place in the jury box, and be subject to the same rules and regulations as though the alternate

United States District Court
Northern District of California

1    juror had been selected as one of the original jurors.

2    Cal. Penal Code § 1089.

3    Mr. Patino argued on appeal (as he does here) that the dismissal of Juror B2 violated his

4    state law rights and his federal constitutional right to trial by an impartial jury.  The California

5    Court of Appeal had "no difficulty concluding the trial court met its obligation to investigate and

6    did not abuse its discretion in determining Juror B2 was unable to perform her duty because of her

7    sick child and lack of childcare." *Patino*, 2018 WL 4113155, at *9.  That court also rejected Mr.

8    Patino's argument that hindsight showed that defense counsel was correct "that allowing juror B2

9    leeway to care for her son without removing her from the jury would not have caused more than a

10   short delay: the testimony of the remaining defense character witnesses was quite short and went

11   quickly.'"  *Id.*  The state appellate court explained that the reasonableness of the trial court's

12   decision to dismiss a juror "'must be considered at the time the decision was made and not with

13   the benefit of hindsight.'"  *Id.* (citation omitted).  Moreover, the state appellate court noted that the

14   record did not show that the trial court's concern that the child's illness might last more than a day

15   was unfounded.  *Id.* (citation omitted).

16   The California Court of Appeal did not discuss the federal constitutional claim that had

17   been presented to it.  Because there is no reasoned state court decision on the federal constitutional

18   claim, this Court "must determine what arguments or theories supported or . . . could have

19   supported the state court's decision; and then it must ask whether it is possible fairminded jurists

20   could disagree that those arguments or theories are inconsistent with the holding in a prior

21   decision" of the U.S. Supreme Court.  *Harrington v. Richter*, 562 U.S. at 102.

22   2.   Analysis Of Claimed Violation of Right To Trial By Impartial Jury

23   The Sixth Amendment guarantees the criminally accused the right to a fair trial by a panel

24   of impartial jurors.  U.S. Const. amend. VI; *see Irvin v. Dowd*, 366 U.S. 717, 722 (1961).

25   The purpose of the jury trial, as we noted in *Duncan,* is to prevent
26   oppression by the Government. "Providing an accused with the right
     to be tried by a jury of his peers gave him an inestimable safeguard
     against the corrupt or overzealous prosecutor and against the
27   compliant, biased, or eccentric judge." *Duncan v. Louisiana,* [391
     U.S. 145, 156 (1968)].  Given this purpose, the essential feature of a
28   jury obviously lies in the interposition between the accused and his

United States District Court
Northern District of California

24

1   accuser of the commonsense judgment of a group of laymen, and in
the community participation and shared responsibility that results
2   from that group's determination of guilt or innocence.

3   *Williams v. Florida*, 399 U.S. 78, 100–01 (1970); *see id.* at 103 (holding that state's refusal to

4   impanel more than six members for a jury did not violate the defendant's Sixth Amendment right

5   to trial by jury); *Duncan*, 391 U.S. at 149-50 (Fourteenth Amendment guarantees a right to jury

6   trial in all state court criminal cases that would, if tried in federal court, come within the Sixth

7   Amendment's right to jury trial). "Due process means a jury capable and willing to decide the

8   case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial

9   occurrences and to determine the effect of such occurrences when they happen." *Smith v. Phillips*,

10   455 U.S. 209, 217 (1982) (finding no basis to conclude that juror was impliedly biased where trial

11   judge held a post-trial hearing and determined that jury's verdict was not influenced by the fact

12   that one juror applied for a job with the district attorney's office during the trial); *id.* at 218 (trial

13   judge's findings that juror's application for a job with the district attorney's office did not

14   influence the jury's verdict had a presumption of correctness under § 2254(e) that had not been

15   overcome by clear evidence).

16       Other than these very broad principles mentioned above about the jury-trial right, this

17   Court has not found any Supreme Court authority that would aid in the analysis of Mr. Patino's

18   claim. These Supreme Court cases speak in very broad terms about the jury trial right.

19   "[E]valuating whether a rule application was unreasonable requires considering the rule's

20   specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-

21   by-case determinations." *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004).

22       There are two published cases from the Ninth Circuit on the dismissal of jurors under

23   California Penal Code § 1089. The Ninth Circuit has determined that the California juror-

24   substitution procedure in California Penal Code § 1089 is constitutionally adequate because it

25   "preserve[s] the 'essential feature' of the jury required by the Sixth and Fourteenth

26   Amendments.'" *Miller v. Stagner*, 757 F.2d 988, 995 (9th Cir. 1985) (quoting *Williams v.*

27   *Florida*, 399 U.S. 78, 100 (1970)). In *Miller,* the trial court dismissed two jurors on the fifth day

28   of deliberations. One juror had called in sick with the flu, and the parties agreed that she could be

United States District Court
Northern District of California

dismissed and replaced.  After learning that another juror thought the second juror had been

intoxicated, the trial court held a hearing at which the second juror admitted having fallen asleep

but denied having been intoxicated and other witnesses testified that they smelled alcohol on his

breath.  *Id.*  The trial court dismissed the second juror, replaced the two dismissed jurors with

alternates, and instructed the jury to begin deliberations anew.  The petitioners complained that the

dismissal and replacement of the two jurors deprived them of their rights to trial by jury and due

process.  *Id.*  The Ninth Circuit disagreed, concluding that the procedures followed by the trial

court did not violate the petitioners' federal constitutional rights and "preserved the 'essential

feature' of the jury required by the Sixth and Fourteenth Amendments."  *Id.  Miller* determined

that "section 1089 is facially valid under the Sixth Amendment."  *Perez v. Marshall*, 119 F.3d

1422, 1426 (9th Cir. 1997).  The second case from the Ninth Circuit, *Perez*, held that substantial

evidence supported the state trial court's conclusion that a juror's emotional instability that

rendered her incapable of participating in further deliberations provided good cause to remove her

from the jury. "The trial court conducted a lengthy interview with juror Robles before determining

that she was unfit to continue deliberating" due to her emotionally upset state.  *Id.*  The Ninth

Circuit also held that the fact that the emotionally upset juror in *Perez* was known by the trial

court to be a holdout juror – i.e., she wanted to acquit while other jurors wanted to convict – did

not improperly influence the trial court's decision to dismiss her.  *Id.* at 1424, 1427.[7]

　　　　In his direct appeal (and here) Mr. Patino pointed to absolutely nothing, other than the fact

of dismissal of the juror itself, to suggest that there was a violation of his jury-trial right.  But the

mere dismissal of a juror simply is not enough to show a violation of the constitutional right to a

---

[7] The dissent in *Perez* focused on the fact that the other jurors knew the trial court had dismissed the juror who was known to them and the court to be the lone holdout juror. *Id.* at 1428-29 (Nelson, J., dissenting).  In the dissenting judge's view, the dismissal of the holdout juror sent "a strong message to the remaining 11 jurors that the trial court endorsed their proclivity for conviction and implicitly encouraged them to 'hold their position.'  This kind of reverse coercion interferes with the jury's independent deliberations and threatens the defendant's Sixth Amendment right to a fair trial." *Id.* at 1429 (Nelson, J., dissenting) (citation omitted).  The dissent in *Perez* touched upon a key concern in dismissing a juror: that a judge might purposely or inadvertently tip the scales toward a conviction.  That concern simply was not present in Mr. Patino's case because the jury had not even started deliberations and Juror B2 was not a holdout juror.

trial by jury.  As with most of his other claims, this claim was presented primarily as a claim for a state-law error and included only a passing reference to the violation of a federal constitutional right.  Mr. Patino did not attempt – here or in his state court appeal – to explain just how the dismissal of Juror B2 deprived him of a panel of impartial jurors.  Mr. Patino provided no clues with his minimal case citations, which consist of two Supreme Court cases and one Ninth Circuit case:  *Irvin v. Dowd*, 366 U.S. 717 (1961); *Smith v. Phillips*, 455 U.S. 209 (1982); and *Green v. White*, 232 F.3d 671 (9th Cir. 2000).  None of these cases have facts anywhere near to facts in Mr. Patino's case.

*Irvin*, 366 U.S. 717, 722, confronted the problem posed by extensive pretrial publicity that had tainted the jury pool.  *Irvin* explained that, although it generally is sufficient "if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court," *id.* at 723, that rule does not foreclose inquiry when the circumstances suggest such widespread prejudice against a defendant that a fair trial cannot be had, *see id.* at 727-28.  *Smith*, 455 U.S. 209, involved a juror who applied for a job with the district attorney's office during the trial.  The Supreme Court explained that its cases had established that "due process does not require a new trial every time a juror has been placed in a potentially compromising situation"; and held that there was no due process violation on the facts in that case. *Id.* at 217.  *Green v. White*, 232 F.3d 671, dealt with a juror who concealed his criminal history from the trial court, and told other jurors he believed the defendant was guilty as soon as he saw him and wished he could shoot the defendant.  The Ninth Circuit granted habeas relief on the ground that the petitioner had been denied his right to trial by an impartial juror, concluding that the juror's "pattern of lies, inappropriate behavior, and attempts to cover up his behavior introduced 'destructive uncertainties' into the fact-finding process" such that bias must be presumed.  *Id.* at 676, 678.  These cases do not involve any facts that were anywhere close to those present in Mr. Patino's situation and do not provide any legal principles directly applicable to his claim.

Relief on Mr. Patino's claim is foreclosed under § 2254(d)(1) because the rejection of his claim was not contrary to, and did not involve an unreasonable application of, clearly established Federal law as determined by the U.S. Supreme Court.  28 U.S.C. § 2254(d)(1).  In short, the U.S.

1  Supreme Court has never issued any holdings that give a clear answer to the questions presented

2  by Mr. Patino's claim.

3          The Supreme Court has not issued a holding addressing the propriety of a trial court

4  removing a juror due to an inability to continue to attend trial.  *Cf. Williams v. Johnson*, 840 F.3d

5  1006, 1009-10 (9th Cir. 2016) (explaining that, although the Ninth Circuit earlier had held that

6  reversal is warranted when it is "reasonably possible" that a juror has been dismissed due to her

7  position on the merits of the case, habeas relief was not available because there was no similar

8  holding from the Supreme Court and circuit-level precedent could not be the basis to grant relief in

9  a habeas case governed by § 2254); *Victorian v. Singh*, 584 F. App'x 742, 743 (9th Cir. 2014) (no

10  habeas relief for petitioner who had "cited no United States Supreme Court case holding that

11  dismissal of a juror, holdout or otherwise, is unconstitutional").

12          The Supreme Court also has not issued a holding that would govern resolution of Mr.

13  Patino's argument that the trial court should have paused the trial and made a daily determination

14  of whether and when Juror B2 could return to jury duty based on the state of her son's health.  The

15  Supreme Court has held that it is reversible error for a trial court to inquire about the extent of the

16  jury's numerical division when a jury reports that it is deadlocked.  *Brasfield v. United States*, 272

17  U.S. 448, 449-50 (1926).  *Brasfield* does not aid in determining whether Mr. Patino is entitled to

18  relief because the jury in his case had not even started deliberating so the trial court had no

19  occasion to inquire about the nature and extent of the jury's numerical division before considering

20  whether Juror B2 should be dismissed.  Although *Brasfield* puts a limit on how far a court *may* go

21  -- i.e., it may not ask about the extent of the jury's numerical division -- *Brasfield* simply provides

22  no help in determining how far a trial court *must* go in making inquiries in response to a juror who

23  reports that she is unable to continue serving on the jury.

24          Finally, the Supreme Court has not issued a holding that the Constitution requires a trial

25  court to try alternative remedies, such as postponing the trial in the hopes that Juror B2's son's

26  illness would be short-lived, before choosing to dismiss a juror.

27          Due to the absence of a holding from the U. S. Supreme Court on point, § 2254(d)(1) bars

28  relief on Mr. Patino's claim that his right to trial by an impartial jury was violated when the trial

United States District Court
Northern District of California

28

court dismissed Juror B2.  Even if one considered the statement in *Smith v. Phillips* that due process requires a jury "capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen," 455 U.S. at 217, to provide clearly established federal law from the U.S. Supreme Court, the California Court of Appeal's decision was not contrary to, or an unreasonable application of, that decision.

The trial court made a "find[ing] that Juror B2 is unable to perform – continue to perform her duty as a juror now because of her family emergency, which is the illness of her son."  RT 1002.  That finding is presumed correct here.  *See* 28 U.S.C. § 2254(e).  The California Court of Appeal reasonably could have held that the trial court made an adequate inquiry into the facts before determining that Juror B2 should be dismissed due to her need to care for her sick child. The California Court of Appeal also reasonably could have concluded that the trial judge satisfied the duty to be "ever watchful to prevent prejudicial occurrences," *Smith*, 455 U.S. at 217, and that there was no prejudicial occurrence on the facts presented.  There was no hint of misconduct by the juror; she simply had a sick child who needed her attention.  And there was no suggestion that Juror B2 was a holdout juror; indeed, deliberations had not even begun.  Mr. Patino is not entitled to the writ on this claim.

E.     Claim Of Prosecutorial Misconduct In Closing Argument The Impact of The System On The Victim And The Defense Calling The Victim A Liar

1.     Background

Mr. Patino claims that his federal due process right to a fair trial was violated when, during closing argument, the prosecutor appealed to the passion and prejudice of the jurors with references to the impact the criminal justice system was having on the minor victim and denigrated defense counsel for challenging Doe's testimony.  Docket No. 1 at 42.  The comments in question are the italicized statements made in this rebuttal argument:

> Now, *it's not easy being a child molest victim*, having to answer questions from everyone, having adults ask you over and over the same thing, having to go to [Child Protective Services], go to Calico [i.e., a center to report and be interviewed about child abuse], talk to the D.A.'s office, testify at a preliminary hearing for day and a half,

testify at this trial over the course of two days, answering every question from so many different people.  And God forbid there's any deviation in any answers then be attacked by the defense as being inconsistent.  *It's not easy being a child molest victim being accused of lying.*

Defense said, Oh, your heart goes out to her.  No.  *The defense is calling her a liar.*

RT 1192.  Defense counsel then objected that this was "improper argument," and the court overruled the objection.  RT 1192.

Mr. Patino argued on appeal (as he does here) that the comment that it was "not easy being a child molest victim" improperly appealed to the jurors to feel sympathy toward the victim.  And he argues that the argument that "the defense is calling her a liar" improperly denigrated defense counsel.

The California Court of Appeal first rejected Mr. Patino's claim that the argument that it was "not easy being a child molest victim" improperly appealed to the jurors to feel sympathy toward the victim:

"A criminal prosecutor has much latitude when making a closing argument.  Her argument may be strongly worded and vigorous so long as it fairly comments on the evidence admitted at trial or asks the jury to draw reasonable inferences and deductions from that evidence."  (*People v. Seumanu* (2015) 61 Cal.4th 1293, 1330 (*Seumanu*).)

"'The applicable federal and state standards regarding prosecutorial misconduct are well established.  "'A prosecutor's . . . intemperate behavior violates the federal Constitution when it comprises a pattern of conduct "so egregious that it infects the trial with such unfairness as to make the conviction a denial of due process."'" . . .

"It is 'settled that an appeal to the jury to view the crime through the eyes of the victim is misconduct at the guilt phase of trial; an appeal for sympathy for the victim is out of place during an objective determination of guilt.  [Citations.]'"  (*People v. Arias* (1996) 13 Cal.4th 92, 160.)

. . . [T]he prosecutor did not improperly ask the jury to view the crime through the eyes of the victim.  (He did not, for example, ask the jury to imagine the emotional and physical pain Doe must have suffered from the continuous sexual abuse inflicted by Patino.)  Rather, he was pointing out how difficult it was for Doe to talk about the embarrassing details of the crime repeatedly with strangers, a point Doe herself made when she testified that she was embarrassed to talk about what Patino did to her.  Taken in context, it is clear the prosecutor was arguing that this difficulty could explain the discrepancies in Doe's allegations over time.  The

prosecutor's comment was a permissible response to defense
counsel's attack on Doe's credibility.

*Patino*, 2018 WL 4113155, at *11-12.

The California Court of Appeal also rejected the claim that the prosecutor had improperly

denigrated defense counsel by saying "the defense is calling [Doe] a liar":

> """A prosecutor commits misconduct if he or she attacks the
> integrity of defense counsel, or casts aspersions on defense counsel."
> [Citations.]  "In evaluating a claim of such misconduct, we
> determine whether the prosecutor's comments were a fair response
> to defense counsel's remarks" [citation], and whether there is a
> reasonable likelihood the jury construed the remarks in an
> objectionable fashion [citation].'  [Citation.]  . . .
>
> We see nothing improper in this comment. In her closing argument,
> defense counsel told the jury Doe "had every reason in the world to
> make up these allegations" and she had "motive to lie."  (Italics
> added.)  The prosecutor's comment that "the defense calls the victim
> a liar" was a fair response to defense counsel's remarks.

*Patino*, 2018 WL 4113155, at *12.

As the last reasoned decision from a state court, the California Court of Appeal's decision

is the decision to which § 2254(d) is applied.  *See Wilson*, 138 S. Ct. at 1192.  Mr. Patino is

entitled to habeas relief only if the California Court of Appeal's decision was contrary to, or an

unreasonable application of, clearly established federal law from the U.S. Supreme Court, or was

based on an unreasonable determination of the facts in light of the evidence presented

### a.   Analysis of Federal Constitutional Claim

The appropriate standard of review for a prosecutorial-misconduct claim in a federal

habeas corpus action is the narrow one of due process and not the broad exercise of supervisory

power.  *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) ("it 'is not enough that the prosecutors'

remarks were undesirable or even universally condemned'"); *Smith v. Phillips*, 455 U.S. 209, 219

(1982) ("the touchstone of due process analysis in cases of alleged prosecutorial misconduct is the

fairness of the trial, not the culpability of the prosecutor").  Under *Darden*, the inquiry is whether

the prosecutor's behavior or remarks were improper and, if so, whether they infected the trial with

unfairness.  *Tan v. Runnels*, 413 F.3d 1101, 1112 (9th Cir. 2005).  The "*Darden* standard is a very

general one, leaving courts 'more leeway . . . in reaching outcomes in case-by-case

determinations.'"  *Parker v. Matthews*, 567 U.S. 37, 48 (2012) (omission in original) (quoting

United States District Court
Northern District of California

1   *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

2       Here, the California Court of Appeal's rejection of these claims of prosecutorial

3   misconduct was a reasonable application of the federal constitutional standard.  As the state

4   appellate court reasonably determined, the prosecutor's comments were a fair response to defense

5   counsel's remarks.

6       A prosecutor's comment in rebuttal "must be evaluated in light of the defense argument

7   that preceded it."  *Darden*, 477 U.S. at 179.  "Criticism of defense theories and tactics is a proper

8   subject of closing argument."  *United States v. Sayetsitty*, 107 F.3d 1405, 1409 (9th Cir. 1997); *cf.*

9   *United States v. Frederick*, 78 F.3d 1370, 1379-80 (9th Cir. 1996) (prosecutor's back-handed

10  compliment to defense lawyer for confusing witness, which appeared to imply that his methods

11  were somewhat underhanded and designed to prevent truth from coming out, was improper but not

12  alone reversible error).  Here, the prosecutor's comments that it was "not easy" to be a child

13  molestation victim and that the defense had called Doe a liar were fair responses to the efforts of

14  defense counsel in the defense closing argument to show that Doe had lied.  It was not an

15  unreasonable application of *Darden* for the California Court of Appeal to reject the prosecutorial-

16  misconduct claim.

17      The comment that it was "not easy being a child molest victim" related directly to the

18  defense closing argument that tried to undermine Doe's credibility by pointing out how her story

19  had changed over the course of several months as she was interviewed by different adults.

20  Defense counsel had argued that Doe's "descriptions of sexual acts sound sort of like what a 16-

21  year-old has cobbled together from T.V., internet, her friends. . . . Sounds more like a description

22  than an actual memory."  RT 1160.  Defense counsel had then suggested that Doe was making

23  things up, pointing at the variations between her statements at Child Protective Services, the

24  Calico Center, and the D.A.'s office, as well as during interviews before the preliminary hearing

25  and in her testimony at the preliminary hearing.  RT 1160-61.  Defense counsel had argued, for

26  example, that Doe's statements that Mr. Patino had kissed her in the shower and put something in

27  her vagina when her eyes were covered were "really bizarre" in that "they don't come up until

28  very late in her description of these events."  RT 1160.  Defense counsel then continued: "I went

United States District Court
Northern District of California

1    through with her on the stand each and every time she has talked about these events": Doe had not

2    mentioned these two incidents in her statements at Child Protective Services, the Calico Center,

3    and the D.A.'s office in 2016 – and that it was not until "the fourth time she's talked about the

4    events of this case that she first tells that story about her eyes being covered and something that's

5    not his thumb going inside her vagina."  RT 1160-61.  A few sentences later, defense counsel had

6    argued that it "seems like that's something you'd remember when person after person after person

7    is asking you to tell them everything you remember about being sexually abused."  RT 1161.  As

8    to a kiss in the shower that Doe first described in later questioning, defense counsel had urged:

9    "Isn't that something she would have remembered earlier if that had actually happened?"  RT

10   1162; *see also id.* ("And if it had happened, she would have told someone sooner than two years

11   after the first time she talks about this.").  Defense counsel then argued:

> When [Doe] came in and testified, I think all of our hearts broke for
> her a little bit because the pain that she felt and the pain that she
> showed was real.  That's pain that she has felt throughout this entire
> family dynamic. . . . It's so tempting to see her tears and gloss over
> the fact that there really isn't much evidence here, to gloss over the
> fact that there are actual holes in the prosecution's case.  [¶]  We
> know that she did this to control her mother's actions.

16   RT 1170-71.

17       In light of the extensive defense arguments about the variations in Doe's statements to

18   various authorities, the prosecutor did not render the trial fundamentally unfair with his responsive

19   rebuttal argument that it was "not easy being a child molest victim," having to discuss highly

20   personal and embarrassing details over and over again, only to be criticized for any discrepancies

21   in her statements.

22       With regard to the prosecutor's specific statement that the defense was calling Doe a liar,

23   the state appellate court's rejection of the prosecutorial-misconduct claim was reasonable.

24   Although defense counsel may not have used the exact word "liar" to describe Doe, the

25   overwhelming force of defense counsel's closing argument was that Doe lied in accusing Mr.

26   Patino of molesting her.

27       Before the prosecutor made the statement in rebuttal, defense counsel had argued at length

28   that Doe had fabricated the charges against Mr. Patino in an effort to get Doe's mother to break off

33

her relationship with Mr. Patino because Doe knew Mr. Patino abused Doe's mother.  *See* RT

1148-51; *e.g.,* RT 1148 (defense counsel arguing that "I'm not quite done talking about the

relationship between Edgar and [Doe's mother] because it's from the tumult and the drama of that

relationship that these molestation allegations arise."); RT 1153 (defense counsel arguing that,

when the extended family reported that Mr. Patino was physically abusing Doe's mother, the

police did nothing and told Doe: "we need someone who says, I have been the victim of a crime to

make a report before we can actually do anything.  And so that conversation with the Hayward

police plants an idea in the back of [Doe's] mind."); RT 1154 (defense counsel arguing that, after

Doe's cousins tell her later that "everyone is wondering why you didn't do more to get your Mom

to leave him that she first – for the very first time says Edgar [Patino] molested me.").  Defense

counsel also had argued:

> [W]hen you were doing jury selection – we asked you questions
> about whether or not kids lie and a lot of you wrote that in general
> kids don't have a reason to lie.  And I think that's probably true
> most of the time.  But that's not true in this case.  [¶]  Doe had every
> reason in the world to make up these allegations.  She had two years
> worth of reasons to make up these allegations.  And she comes from
> a family where truth telling isn't valued that highly, where words
> don't really need to be true.  They just need to be what needs to be
> said to get whatever you want in that particular situation.  So she
> used the tools she had been taught.  She used her words to get what
> she wanted.  And she's still doing that.  [¶]  Her motive to lie by
> itself is reasonable doubt.  How can you possibly be sure that she's
> telling the truth when her motive to lie is so strong and so
> understandable.

RT 1157.

Given the foregoing arguments by the defense that plainly and repeatedly suggested that

Doe was lying and doing so for an ulterior motive, the prosecutor's statement in rebuttal that the

defense was calling Doe a liar did not make the trial fundamentally unfair.  The California Court

of Appeal reasonably so determined.

      2.   <u>Asserting That Child Molestation Is Underreported</u>

          a.   <u>Background</u>

Mr. Patino asserts that the prosecutor engaged in misconduct by referring to facts outside

the record when he argued that child molestation was an under-reported crime.  Docket No. 1 at

42.

During his rebuttal argument, the prosecutor took aim at the several defense witnesses who opined that Mr. Patino did not have the character trait for sexual deviancy with children. The prosecutor argued that the defense witnesses' opinions were of little use given the lack of testimony that they ever talked to Mr. Patino about his sexual desires. The prosecutor argued: "Defense witnesses claim he's not a sexual deviant with children because he never acted that way in front of them. Well people such as the defendant don't act out their sexual deviancies involving children in front of friends. [¶] How many times has the world been fooled by friends, family and neighbors? How many times do you see on the T.V. news the reporters interviewing neighbors [sic] someone has just committed a horrible crime the neighbor says, it's a quiet neighborhood." RT 1180-81. Defense counsel objected that this was "improper argument," and the court overruled the objection. RT 1181. Later, the prosecutor argued that having to disclose very personal information to many people and having people accusing a child molestation victim of making things up made it difficult to be a child molestation victim and said: "It's no wonder why *child molestation is a vastly underreported crime*." RT 1192 (emphasis added).

The California Court of Appeal explained that "'counsel may not assume or state facts not in evidence . . . or mischaracterize the evidence,'" *Patino*, 2018 WL 4113155, at *12, but found no violation of that rule.

> [In making a record after the jury argument, the] prosecutor explained this comment was a "common sense" argument that child molesters conduct their crimes in private and in a manner so as not to be detected. The trial court understood the comment as making the point that "the nature of the offense is one that is not spoken of or broadcast." The Attorney General further argues the prosecutor's comment was an appropriate response to the defense character witnesses' assertions that they had never seen Patino display sexual interest in a child. All of these points are well taken; the prosecutor's comment was a permissible response to the defense character evidence. In this context, we believe the comment was fair argument, not an improper statement of fact. Nor do we see how the jury could have understood or applied the comment in an erroneous manner or in a manner that would harm Patino.

*Patino*, 2018 WL 4113155, at *13.

The California Court of Appeal also determined that the specific comment that "child

35

United States District Court
Northern District of California

1   molestation is a vastly underreported crime" was not improper because it was based on evidence

2   presented at trial.  *Id.*  Specifically, "Dr. Rachel Gilgoff--who was called by the prosecution as an

3   expert in pediatrics, child sexual assault, and child sexual assault exams--testified, 'The vast

4   majority of people who have been sexually abused never disclose that abuse.'"  *Id.*

5            b.     <u>Analysis Of Federal Constitutional Claim</u>

6          The California Court of Appeal's rejection of the prosecutorial-misconduct claim was a

7   reasonable application of the federal constitutional standard that only conduct that makes the trial

8   "fundamentally unfair" warrants habeas relief.  A prosecutor "is granted reasonable latitude to

9   fashion closing arguments," and is "free to argue reasonable inferences from the evidence."

10   *United States v. Gray*, 876 F.2d 1411, 1417 (9th Cir. 1989).  As the state appellate court

11   reasonably determined, the prosecutor's comment that the defense witnesses would not have been

12   in a position to make an informed decision about whether Mr. Patino had sexual desires for

13   children was a common sense argument that child molesting is a crime done in private to avoid

14   detection.  "It is expected that jurors will bring their life experiences to bear on the facts of a

15   case."  *Hard v. Burlington N. Ry. Co.*, 870 F.2d 1454, 1462 (9th Cir. 1989); *see also Head v.*

16   *Hargrave*, 105 U.S. 45, 49 (1881) ("far from laying aside their own general knowledge and ideas,

17   the jury should have applied that knowledge and those ideas to the matters of fact in evidence in

18   determining the weight to be given to the opinions expressed; and it was only in that way that they

19   could arrive at a just conclusion").  Moreover, the argument that the defense witnesses were not

20   able to give informed opinions about whether Mr. Patino had a deviant interest in children was

21   consistent with the jury instructions.  The jury was instructed that, in evaluating a witness'

22   testimony, the jurors could consider "how well could the witness see, hear or otherwise perceive

23   the things about which the witness testified."  RT 1213.  The jury also was instructed that, "[i]n

24   deciding whether testimony is true and accurate, use your common sense and experience."  RT

25   1213.  The trial was not rendered fundamentally unfair when the prosecutor highlighted that the

26   defense character witnesses had no real basis on which to base their opinions about whether Mr.

27   Patino had a deviant interest in young girls.

28          The state appellate court also reasonably determined that the particular statement that child

molestation is an underreported crime was not improper because it was a reasonable summation of the testimony from the expert witness, who had testified that most sexual abuse victims never disclose the abuse.

Mr. Patino is not entitled to the writ on his prosecutorial-misconduct claims because he has not shown that the California Court of Appeal's rejection of those claims was an unreasonable application of *Darden*'s rule that a due process violation occurs only when the prosecutor's conduct makes the trial "fundamentally unfair." *See Darden,* 477 U.S. at 181.

F.    No Certificate of Appealability

A certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c).  This is not a case in which "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  Accordingly, a certificate of appealability is **DENIED**.

## VI.    CONCLUSION

For the foregoing reasons, the petition for writ of habeas corpus is **DENIED** on the merits. The Clerk shall close the file.

**IT IS SO ORDERED**.

Dated: May 27, 2020

_____
EDWARD M. CHEN
United States District Judge

United States District Court
Northern District of California